783 P.2d 790

**Helen BARTNING; Luis E. Bartning; Rique Bartning,**
**Plaintiffs/Appellees/Cross–Appellants,**

**v.**

**STATE FARM FIRE AND CASUALTY COMPANY,**
**Defendant/Appellant/Cross–Appellee.**

**No. CV–89–0036–PR.**

Supreme Court of Arizona,
En Banc.

Nov. 9, 1989.

---

Miller & Pitt, P.C. by Thomas G. Cotter, Jonathan Reich, Tucson, for plaintiffs/appellees/cross-appellants.

Chandler, Tullar, Udall & Redhair by D. Burr Udall, Tucson, for defendant/appellant/cross-appellee.

CORCORAN, Justice.

Helen Bartning and her sons, Luis and Rique (plaintiffs) petition for review of a court of appeals decision reversing a trial court award against defendant State Farm. We have jurisdiction under Ariz.Const. art. 6, § 5(3), and A.R.S. § 12–120.24. The question presented is whether Arizona public policy mandates that automobile insurance policies provide uninsured motorist (UM) coverage that is territorially coextensive with liability coverage. Because this is an issue of first impression in Arizona, we granted review. *See* rule 23, Arizona Rules of Civil Appellate Procedure. We conclude that the insurer must provide such coverage.

*Facts and Procedural History*

On April 3, 1985, an uninsured motorist struck and killed Arizona resident Enrique Bartning as he walked in Nogales, Sonora, Mexico, within 50 miles of the United States border. Enrique was the named insured on an automobile policy issued by State Farm. The policy extended liability coverage, medical payments, and physical damage coverage throughout the United States and Canada and into Mexico within 50 miles of the United States border. The policy extended UM coverage, however, solely to the United States and Canada with limits of $15,000 per person and $30,000 per accident.

Enrique's wife Helen, along with Luis and Rique, sought payment from State Farm under the UM coverage in the policy. State Farm refused to pay the claim, stating the policy *explicitly excluded* payment of UM benefits arising from losses occurring in Mexico. Plaintiffs sought declaratory relief. The parties submitted the matter to the trial court on stipulated facts and filed cross-motions for summary judgment.

The trial court granted partial summary judgment to plaintiffs on Enrique's policy, holding that, notwithstanding the territorial limitation the policy purported to place on the UM coverage, the policy afforded coverage. The court found the territorial restriction void as a violation of Arizona's public policy. Judgment for plaintiffs equalled the policy limits of $15,000, attorneys' fees totalling $1,230, and court costs.

State Farm timely appealed from the trial court's decision regarding Enrique's policy. Relying chiefly upon its decision in *Transamerica Insurance Co. v. McKee*, 27 Ariz.App. 158, 551 P.2d 1324 (1976) (Hathaway, J., specially concurring), a divided court of appeals reversed the trial court's award to plaintiffs, holding that Arizona's public policy did not require territorially coextensive UM and liability coverage. The court of appeals also awarded State Farm attorneys' fees on appeal.

Judge Hathaway dissented, citing his special concurrence in *Transamerica* and reiterated his view that, by statute, the Arizona legislature mandated that all auto-

mobile liability policies issued in Arizona provide territorially coextensive UM coverage.

### Analysis

1. The *Transamerica* opinion.

The court of appeals decision rested on the public policy grounds enunciated in *Transamerica*. As in this case, *Transamerica* involved a declaratory judgment action concerning the territorial scope of UM coverage provided in an automobile liability policy. The *Transamerica* policy extended liability coverage worldwide, but a UM endorsement explicitly limited coverage only to the United States and Canada. The court of appeals framed the issue as whether a liability policy covering accidents in Mexico, yet excluding UM coverage in Mexico, violated Arizona public policy. The *Transamerica* court of appeals categorically rejected the appellees' argument that coverage was territorially coextensive on public policy grounds, although it held that the appellees' policy afforded them UM coverage on other grounds. 27 Ariz.App. at 161, 551 P.2d at 1327.

The court reviewed the history of UM coverage in Arizona, noting that the legislature passed A.R.S. § 28–1170, which required all automobile insurance policies to contain liability insurance. The court found the legislature intended to protect the public from motor vehicle operation by financially irresponsible individuals. 27 Ariz.App. at 161, 551 P.2d at 1327.

Because not all owners purchased insurance, however, the legislature subsequently enacted A.R.S. § 20–259.01 as a gap-filling provision. That section, requiring automobile policies to provide UM coverage, reads:

A. No automobile liability ... policy ... shall be delivered ... in this state ... unless coverage is provided ... for the protection of persons insured ... from owners or operators of uninsured motor vehicles....

B. Every insurer writing automobile liability ... policies ... shall also make available to the named insured ... and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

A.R.S. § 20–259.01. The court of appeals noted the statute's silence regarding territorial requirements of UM coverage; however, when the purpose of the statute is considered, the court stated, "it is clear that the territorial extent of coverage is the same as is required of liability coverage, to wit, the United States and Canada." 27 Ariz.App. at 161, 551 P.2d at 1327.

In *Transamerica*, the court of appeals held that public policy did not require UM coverage to be territorially coextensive with liability coverage. 27 Ariz.App. at 161, 551 P.2d at 1327. In so holding, the court rejected a contrary opinion rendered by the California Supreme Court in *Mission Insurance Co. v. Brown*, 63 Cal.2d 508, 47 Cal.Rptr. 363, 407 P.2d 275 (1965).

Specially concurring, Judge Hathaway said the court mistakenly rejected the holding of *Mission:*

Implicit in the statute [§ 20–259.01(A)] is the mandate that *all* automobile liability policies provide co-extensive uninsured motorist coverage.

Taking the minimum area requirement for issuing liability policies and imposing it as an uninsured motorist coverage area restriction ... overlooks the remedial purpose of the uninsured motorist statute and the policy that it be liberally construed to effectuate that purpose.... Efforts by insurers to frustrate this statute by writing limitations into their policies ... should not be validated.

Uninsured motorist coverage reasonably follows liability coverage. Thus, the statute sets no boundaries because at a minimum, they must coincide with the liability policy boundaries in view of the statutory language that *"no"* liability policy is to issue without uninsured motorist coverage.

27 Ariz.App. at 162, 551 P.2d at 1328 (emphasis in original).

## 2. The court of appeals opinion.

In this case, the court of appeals noted that plaintiffs' insurance paralleled the policy at issue in *Transamerica*. The court then cited *Transamerica* for two propositions: (1) Arizona public policy does not require extension of UM coverage to Mexico, and (2) Arizona public policy does not mandate territorial coextension of UM coverage under an insurance policy extending only liability coverage to Mexico. The court also disapproved of the *Mission* holding and rationale. Accordingly, the court of appeals refused to extend the policy's UM coverage to Mexico.

As further support, the court of appeals cited this court's recent opinion in *Employers Mutual Casualty Co. v. McKeon*, 159 Ariz. 111, 765 P.2d 513 (1988). In particular, the court of appeals felt the following language buttressed its conclusion: "The intent [of the UM statute] is to protect each insured no matter where he is (*within the policy's territorial limits*) or what he is doing." *Employers*, 159 Ariz. at 114, 765 P.2d at 516 (emphasis added).

Consistent with his position in *Transamerica*, and for the same reasons, Judge Hathaway dissented. Additionally, he suggested that the majority misread the above-noted portion of *Employers;* he believed our decision in *Employers* fully supported a territorial coextensive coverage argument.

## 3. Disposition.

◼ This court has previously addressed an "other owned vehicle" exclusion clause contained in a UM clause.[1] *See Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985). In *Calvert*, we noted that § 20–259.01 is remedial, and should be construed liberally to carry out the legislature's intent. 144 Ariz. at 294, 697 P.2d at

687. We also noted that the purpose of the statute is to afford protection to victims of financially irresponsible drivers. 144 Ariz. at 294, 697 P.2d at 687.

We agree with both the *Mission* opinion and Judge Hathaway's *Transamerica* special concurrence in assessing appropriate public policy. We disagree with the *Transamerica* majority opinion as it applies to appropriate public policy. Faced with an equivalent statute, overtly silent regarding territorial extensiveness, the *Mission* court stated:

> The section ... was designed to minimize losses to the people ... who are involved in accidents with uninsured or financially irresponsible motorists, and it would appear that the public policy of this state, as expressed in said section, requires that the insured be protected against damages ·... caused by an uninsured motorist in the same territory in which the policy covers him for liability.

63 Cal.2d at 509, 47 Cal.Rptr. at 364, 407 P.2d at 276.

We observed in *Calvert* that because Arizona's strong public policy mandates UM coverage, we would construe the UM statute's silence on "other owned vehicle" exclusions against the validity of such exclusions. 144 Ariz. at 295, 697 P.2d at 688. Furthermore, we stated: "an express provision in § 20–259.01 authorizing ... exclusions ... could easily have been incorporated into the statute by the Legislature." 144 Ariz. at 295–96, 697 P.2d at 688–89. The *Mission* court neatly summed up these points:

> The statute clearly does not contemplate a piecemeal whittling away of liability ... territorially ·... for injuries caused by uninsured motorists.

63 Cal.2d at 510, 47 Cal.Rptr. at 365, 407 P.2d at 277.[2]

---

1. "Other owned vehicle" exclusion clauses generally deny coverage if an individual covered under the policy is injured while occupying an owned vehicle not covered by the policy. Although this opinion concerns territorial exclusion clauses, we believe that to the extent both clauses define and limit coverage, comments about other vehicle clauses apply equally.

2. *Cf. INA v. Godwin*, 46 A.D.2d 154, 361 N.Y. S.2d 461 (1974) (provision in insurer's policy limiting UM coverage to accidents occurring in New York held void, because nothing in the New York statute requiring UM coverage suggested the legislature intended to permit insurers to limit such coverage). *See generally* 1 A. Widiss, *Uninsured And Underinsured Motorist Insurance*, § 4.24 (2d ed.1987).

We hold that Arizona's public policy dictates that UM coverage be territorially coextensive with liability coverage. Any territorial limitation to the contrary violates that public policy and is void. The trial court thus correctly granted summary judgment in favor of plaintiffs on Enrique's policy; the court of appeals erroneously reversed that judgment.

### Plaintiffs' Cross–Appeal

■ Enrique's son, Luis, had purchased a separate automobile policy from State Farm, under which Luis was the named insured. His policy mirrored his father's, both in territorial scope and dollar amounts. Enrique and Luis were not listed as named insureds on each other's policies.

Luis also sought payment from State Farm, under the UM coverage on his policy, for Enrique's wrongful death. State Farm refused to pay the claim on Luis' policy based on the exclusion of UM benefits from losses occurring in Mexico. When ruling on cross-motions for summary judgment on Luis' claim, however, the trial court granted partial summary judgment to State Farm, holding that Luis' policy did not provide coverage for Enrique's accident because of exclusions in the policy distinct from the territorial restriction.

Plaintiffs timely cross-appealed from the trial court's decision regarding Luis' policy. The court of appeals did not reach the merits of the other exclusions in the policy, holding only that, "in view of our disposition [that the territorial restriction excluded coverage] the cross appeal is moot."

On review to this court, plaintiffs requested that, if we grant relief on the issue of coextensive territorial coverage on Enrique's policy, we should examine the merits of their cross-appeal. Plaintiffs properly preserved the issues in their cross-appeal pursuant to rule 23(c)(2), Arizona Rules of Civil Appellate Procedure.

In view of our holding regarding the territorial exclusion in Enrique's policy, we vacate that portion of the court of appeals opinion mooting Luis' cross-appeal. We hold that the court of appeals incorrectly affirmed the trial court's summary judgment in favor of State Farm on the basis of the territorial restriction in Luis' policy. However, because the court of appeals did not decide the merits of summary judgment based on the other exclusions in Luis' policy, we remand this matter for decision on those issues raised but not decided in the cross-appeal. *See* rule 23(i)(3), Arizona Rules of Civil Appellate Procedure.

### Conclusion

We vacate the court of appeals opinion. To the extent the trial court's decision awarded plaintiffs benefits under Enrique's policy, we reinstate its judgment. We remand Luis' cross-appeal to the court of appeals for further consideration of his claim that the UM portion of his policy provides coverage for Enrique's death. Also, we expressly disapprove the court of appeals opinion in *Transamerica*.

### Attorneys' Fees

Because this case arose out of an insurance contract, plaintiffs requested an award of attorneys' fees in both the trial court and the court of appeals, as well as in this court on review, pursuant to A.R.S. § 12–341.01. The trial court awarded attorneys' fees of $1,230 to plaintiffs; the court of appeals vacated that judgment and awarded attorneys' fees on appeal to State Farm.

Because of our disposition reversing the court of appeals' decision regarding Enrique's policy and remanding to the court of appeals for further determination of the merits of Luis' cross-appeal, we vacate the court of appeals award of attorneys' fees to State Farm.

■ In order to grant attorneys' fees to plaintiffs in this action, however, we would have to determine that plaintiffs are the "successful party" on appeal. Regarding Enrique's claim, plaintiffs are unquestionably the ultimately "successful party" at the end of the appellate process, and are therefore entitled to attorneys' fees incurred in pursuing that claim. *See Wenk v. Horizon Moving & Storage Co.*, 131 Ariz. 131, 639 P.2d 321 (1982).

 Regarding Luis' claim, although we have merely granted relief from summary judgment entered on the basis of the territorial exclusion, our remand to the court of appeals makes this decision an interim order in the appellate process. State Farm potentially may prevail against Luis' claim on the basis of other issues the court of appeals did not previously address. In that case, the court of appeals may award those attorneys' fees incurred on remand to State Farm.

Nevertheless, we believe Luis' entitlement to attorneys' fees up to this point in the litigation is clearly established under the principles we have previously enunciated:

> We believe that under A.R.S. § 12–341.01 "successful party" on appeal is not limited to those who have a favorable final judgment at the conclusion of the appeal process. It may include those who achieve reversal of an unfavorable interim order if that order is central to the case and if the appeal process finally determines an issue of law sufficiently significant that the appeal may be considered as a separate unit. Because [plaintiff's] appeal was on an interim order which settled issues of law central to the case, and because it was sufficiently significant to be treated as a separate unit, we find her eligible under the statute for an award of attorney's fees with respect to the favorable outcome of her petition for review before this court.
>
> . . . .
>
> To establish that she had a tenable legal claim, [plaintiff] was constrained to appeal the entry of summary judgment. In successfully doing so, she established important points of law and public policy. The legitimate ends of the statute are served by holding as we do that she is a "successful party" eligible for fees.

*Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985). In this case, the court of appeals mooted Luis' cross-appeal solely on the basis of the territorial exclusion that we hold violates public policy. Plaintiffs were compelled to seek cross-review in this court to preserve the other issues not yet ruled upon in Luis' cross-appeal. Because we hold the territorial exclusion void, plaintiffs have successfully reinstated those collateral issues in the court of appeals on remand. We find that this situation meets the criteria for an award of attorneys' fees under *Wagenseller*.

Therefore, plaintiffs are awarded attorneys' fees incurred in both the court of appeals thus far and on review in this court, upon compliance with rule 21(c), Arizona Rules of Civil Appellate Procedure. The trial court's award of attorneys' fees is reinstated.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.